CLEVELAND ROLLING–MILL CO. v. JOLIET ENTERPRISE CO. et al.

(Circuit Court, N. D. Illinois. December 24, 1892.)

1. EQUITY JURISDICTION—CREDITOR'S SUIT—RETURN OF EXECUTION.
     A court of equity will not take jurisdiction of a suit brought in aid of a judgment at law, where the bill avers that execution has been issued, and levied upon the judgment debtor's property, and does not allege that such execution has been returned.

2. Same—State and Federal Courts.
    An insolvent corporation confessed judgment in a state court in favor
    of several creditors, and also made a voluntary assignment for the benefit
    of creditors. *Held,* that a federal court had no jurisdiction, at the suit of a
    creditor, brought after the sheriff and assignee had taken possession, to
    interfere with their disposition of the corporation's property.

In Equity. Creditor's bill brought by the Cleveland Rolling-Mill Company against the Joliet Enterprise Company, Henry M. Fish, George M. Fish, Charles M. Fish, and Henry M. Fish, of the firm of Henry Fish & Sons, and others. Dismissed.

Cratty Bros., for complainant.

Moran, Kraus & Mayer and Mr. Hutchins, for Illinois Steel Co.

George S. House, for First Nat. Bank of Joliet, the Will County Nat. Bank, and the assignee.

P. C. Healey, also representing the assignee and the sheriff of Will county.

E. A. Otis, for Merchants' Nat. Bank and Chauncey I. Blair, trustee.

W. A. Montgomery, for Washburn & Moen Manuf'g Co.

C. E. Hill, for the Lambert & Bishop Wire Fence Co. and others.

Chas. S. Holt, for receiver.

GRESHAM, Circuit Judge. This bill, which is filed in behalf of the complainant and all other creditors of the Joliet Enterprise Company who may be admitted as parties and contribute to the expenses of the suit, avers that on December 1, 1892, the complainant obtained a judgment in the Will circuit court of Illinois against the Joliet Enterprise Company, for wire and other material sold and delivered, amounting to $17,464.87; that an execution was immediately issued to the sheriff, which he levied upon the property of the defendant; that at that time, and for some time previous thereto, the members of the firm of Fish & Sons had been the chief officers, directors, and stockholders of the Enterprise Company, and as such had directed and controlled its action and business; that on November 29, 1892, the liabilities of the Enterprise Company were represented by its officers to be more than $600,000, and its assets worth less than $400,000; that for two months previous to the last-named date the company's officers knew it was insolvent, and on different days during that period they caused it to execute and deliver to Fish & Sons five judgment notes, each for $29,000, and payable in 90 days; that the Fishes went through the form of executing the notes, payable to themselves, for an alleged indebtedness due from the company to them as bankers, and the giving of the notes was not ratified by the board of directors of the company until some days later; that on November 30th, the board of directors authorized the officers of the Enterprise Company to execute trust deeds and mortgages to secure Fish & Sons and certain other creditors, and on the same day the company confessed judgment in the Will circuit court, on the five notes, for $176,420.93, and an execution immediately issued thereon, which the sheriff levied upon the real and personal property of the defendant, and will sell the same, unless restrained by

this court; that, when the judgment was confessed, Fish & Sons knew the company was insolvent, and intended forthwith to cease doing business; that on that day the company confessed other judgments, some of which were on notes indorsed by the Fishes, the consideration being that they should be released from liability; that on the same day the Illinois Steel Company sued out an attachment in the Will circuit court against the Enterprise Company for $177,000, which was levied upon the defendants' property, and that other creditors also sued out writs of attachment in the circuit court which were also levied upon the defendants' property. The bill further avers that on the same day Fish & Sons made an assignment to O'Donnell under the insolvent law of Illinois, which was accepted and recorded, and the assignee succeeded to all the rights of the assignors; that on the same day the company executed and delivered to Chauncey I. Blair a deed conveying to him a large amount of real estate to secure an indebtedness due to certain creditors, amounting to more than $150,000, which deed should be held to be a general assignment, within the meaning of the Illinois insolvent law; that the company also undertook to prefer other creditors by confession of judgments and the execution of deeds and mortgages; that the capital stock of the company was $250,000, and the board of directors and officers are liable to creditors for the indebtedness in excess of that amount; and that when the Enterprise Company became insolvent, and failed, its assets became a trust fund for the equal benefit of all its creditors. The bill prays that the lien of the complainant's execution in the state court be maintained; that all deeds, assignments, and mortgages, all judgments obtained in the state court, and all writs of attachment issued by that court, after the company became insolvent, be set aside; that, if the deed to Chauncey I. Blair be not set aside, it be held to be a general assignment, within the meaning of the Illinois assignment law, for the equal benefit of all creditors; that a receiver be appointed of all the property and assets of the company; that the defendants who have in their possession, or under their control, any of the trust property, be required to surrender the same to the receiver; that the sheriff be enjoined from selling any of the property levied on under executions or writs of attachment in his hands; that this court administer upon the assets, and distribute the proceeds thereof ratably among all the creditors; that all the directors and officers of the company who assented to the creation of debts in excess of the capital stock be required to pay into court such excess,—and for general relief.

The rule is that an execution shall issue, and be returned unsatisfied, before a court of equity will exercise its powers in aid of a judgment at law. The execution which was issued upon the judgment obtained by the complainant against the Enterprise Company in the Will circuit court was levied upon property of the defendant; but it does not appear from the bill what was done with that levy, or the writ under which it was made. It may be that the sheriff will be able to sell the property in his custody for enough to satisfy the judgment. This is a creditor's bill in aid of a judgment

obtained in a state court; and if it appeared that the execution had been returned unsatisfied, or that the complainant could accomplish nothing by further efforts at law, the question would remain, can this court entertain such a bill in aid of a judgment obtained in another jurisdiction? I express no opinion on the question, as the bill must be dismissed for other reasons.

I understand my learned predecessor held that a judgment of a state court was a proper basis for a creditor's suit in this court, and that, on the authority of that ruling, Judge Blodgett has so held. This court cannot administer upon property in the lawful custody of the Will circuit court. It cannot enjoin litigants from prosecuting proceedings pending in that court, nor can it enjoin the sheriff of that court from executing its process. The execution which issued upon the judgment in favor of Fish & Sons, as well as other executions and attachment writs in the sheriff's hands, was levied upon property of the Enterprise Company before this bill was filed. O'Donnell, the assignee of Fish & Sons, is presumably administering upon the assets of that firm, under the direction of the Will county court; and neither that court nor the Will circuit court can be required to surrender to this court property over which they first acquired jurisdiction.

It is urged by the counsel for the complainant that by reason of the insolvency of the Enterprise Company, its assets became trust property before any of the judgments were obtained in the Will circuit court, and that, therefore, this court may rightfully entertain the bill, and enjoin the sheriff from selling or otherwise disposing of any of the property in his custody. If it be true—and I do not hold that it is—that, when the company became insolvent, it ceased to have power to dispose of any of its assets, and they at once became trust property for the equal benefit of all creditors, it does not follow that this court can require the Will circuit court and the Will county court to surrender to it, for administration, property in their lawful custody.

It is further urged by counsel for the complainant that, even if this court cannot interfere with the proceedings now pending in the state courts, or obtain custody of the property and assets of the Enterprise Company for administration, it has jurisdiction to follow the proceeds thereof into the hands of all persons who may receive them with knowledge of the company's insolvency. The obvious answer to that position is that none of the defendants may ever receive any part of such proceeds.

The jurisdiction of the Will circuit court to entertain the bill and grant the relief prayed for cannot be questioned. The suit is dismissed.